(No. 106612.—

*In re* MARRIAGE OF SUZANNE GULLA, Appellee, and STEPHEN KANAVAL (Knobias, Inc., Appellant).

*Opinion filed June 4, 2009.—Rehearing denied September 28, 2009.*

Michael S. Danian, of Waukegan, for appellant.

Joseph R. Poell, of Ericksen, Poell, Jacquette & Carpenter, of Waukegan, for appellee.

Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro, Solicitor General, and Diane M. Potts, Assistant Attorney General, both of Chicago, of counsel), for *amicus curiae* Illinois Department of Healthcare and Family Services.

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Thomas, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

The circuit court of Lake County ordered appellant, Knobias, Inc., located in Mississippi, to pay to Suzanne Gulla a penalty for failing to withhold and remit child support from its employee's wages. The court calculated the penalty based on section 35(a) of the Income Withholding for Support Act (Withholding Act) (750 ILCS 28/35(a) (West 2006)). The appellate court affirmed. 382 Ill. App. 3d 498. We allowed Knobias' petition for appeal as a matter of right (210 Ill. 2d R. 317). For the following reasons, we affirm the judgment of the appellate court, but remand the cause to the circuit court to recalculate the penalty based on Mississippi law.

### I. BACKGROUND

In July 1994 the circuit court entered a judgment dissolving the marriage of Suzanne Gulla, formerly known as Suzanne Kanaval, and Stephen Kanaval. Pursuant to a marital settlement agreement, Stephen was ordered to pay, among other items, child support for their two children. In April 2004 the circuit court entered an agreed order and judgment finding that Stephen's child support obligations had previously terminated and imposing judgment against Stephen for the lump sum of $123,140.63 in past due child support. Stephen was ordered to pay $3,000 per month to Suzanne until the judgment was paid in full. In February 2005 Stephen became unemployed. In March 2005, the court entered an order deferring Stephen's obligation to pay the arrearage until he was re-employed. According to a November 2005 order, Stephen's attorney informed the court that Stephen was "employed by Knobias, Inc., [telephone number; fax number] in the State of New York." The court ordered Stephen to provide all necessary information for the issuance of a notice to withhold income to pay the arrearage.

On March 20, 2006, the circuit court entered an order requiring Stephen to resume payment of the previously ordered $3,000 per month toward the child support arrearage and completed a "Uniform Order for Support" form. The court also issued to Knobias a "Notice To Withhold Income For Support." The notice directed Knobias to withhold a total of $3,000 per month from Stephen's pay and, within seven business days of the pay date, remit the money to the State Disbursement Unit. The telephone number, fax number and e-mail address of Suzanne's attorney were listed in the notice. Suzanne's attorney sent to Knobias, via certified mail, the income withholding notice and a copy of Stephen's child support order under a cover letter with the same attorney's contact information. The letter, directed to Knobias' payroll clerk, stated that the notice was effective immediately. According to the return receipt, Knobias received the income withholding notice on March 28, 2006.

In October 2006 the circuit court granted Suzanne leave to file a petition for rule to show cause why Knobias should not be held in indirect civil contempt of court. Suzanne filed that petition the next month. The petition recounted the court's March 20, 2006, order requiring Stephen to resume paying the child support arrearage and the income withholding notice issued to Knobias. The petition alleged that Knobias received the notice on March 28, 2006. Further, the petition alleged that in "an intentional, willful and contumacious violation" of the notice, Knobias had refused to forward Stephen's withheld pay to the State Disbursement Unit as ordered.

On December 4, 2006, Knobias filed an objection to the circuit court's jurisdiction over it pursuant to section 2—301 of the Code of Civil Procedure (735 ILCS 5/2—301 (West 2006)). On December 15, 2006, at the close of

a hearing, the circuit court found that it had personal jurisdiction over Knobias. In a separate order, the court issued the rule to show cause against Knobias.

In January 2007 Knobias filed a substantive response to the rule to show cause. In support thereof, Knobias attached the affidavit of its in-house counsel, Kristen Hendrix. Knobias contended that it acted in good faith to comply with the income withholding notice. Knobias alleged as follows. On March 28, 2006, Knobias received the income withholding notice and Stephen's child support order. The next day, Martin Waitzman, Stephen's new attorney, informed Hendrix that he would move to vacate Stephen's child support order and Knobias' income withholding notice without objection from Suzanne's attorney. In April 2006 Waitzman did file a motion to vacate the child support order and the income withholding notice. He also informed Hendrix that Suzanne and Stephen had settled the issue of Stephen's child support order and that Stephen was making payments through ExpertPay, a child support payment organization. On October 27, 2006, Knobias received the petition for rule to show cause, and began withholding 50% of Stephen's wages from his biweekly paycheck, which was the maximum amount that Knobias could withhold pursuant to Mississippi law. On October 31, Hendrix had a telephone conversation with Suzanne's attorney. Hendrix informed him that Knobias had thought the matter was settled but, nevertheless, had begun to withhold 50% of Stephen's net pay. Hendrix further informed Suzanne's attorney that Stephen's net monthly wage of $2,244.16, or $1,122.08 per pay period, could not satisfy the withholding order of $3,000 per month. Suzanne's attorney replied that Stephen's entire net wage should be withheld. Since Knobias did not want to violate Mississippi law, it continued to withhold 50% of Stephen's

biweekly wages, $561.04, for five pay periods in November through December 2006, totaling $2,805.20. On December 29, Knobias sent a check in that amount to the State Disbursement Unit. Hendrix further alleged that, as of December 22, 2006, Stephen was no longer an employee of Knobias.[1]

On February 5, 2007, the circuit court held a hearing on the rule to show cause, in which Hendrix testified by telephone. At the close of the hearing, the court entered judgment against Knobias for failing to withhold Stephen's income. The court found: the March 20, 2006, order was properly entered; the income withholding notice was properly served on Knobias, which acknowledged receipt on March 28, 2006; and there was no subsequent order modifying the income withholding notice. The court further found that Knobias did not withhold any of Stephen's wages, pursuant to the notice, until November 3, 2006. Accordingly, the circuit court ordered Knobias to pay $7,854.56 as the amount that it should have withheld from Stephen's pay during April through October 2006. The order expressly based that figure on Knobias' representation that Stephen's monthly net pay was $2,244.16, and on a withholding ceiling of 50%. The court scheduled a hearing on February 26, 2007, to determine the amount of the $100-per-day penalty that would be assessed against Knobias.

Knobias filed a motion to reconsider. On February 26, 2007, the circuit court held a hearing on the motion. At the close of the hearing, the circuit court denied Knobias' motion to reconsider and entered judgment against Knobias in the amount of $168,000 for failing to comply with the notice to withhold income.

On March 12, 2007, Suzanne filed a motion to modify

---

[1]On January 24, 2007, Waitzman filed a motion to withdraw as Stephen's counsel, which was granted on February 5, 2007.

the penalty. She recounted that on February 5 the circuit court entered judgment against Knobias for $7,854.56 as the actual amount that the company should have withheld and remitted. She alleged that Stephen still had not paid any amount of that judgment. Suzanne recalculated the $100-per-day penalty on that judgment. On March 26, 2007, the court granted Suzanne's motion to modify the penalty and entered judgment against Knobias in the amount of $369,000, calculated "through and including March 26, 2007."

The appellate court affirmed. 382 Ill. App. 3d 498. The appellate court: (1) concluded that the circuit court properly exercised personal jurisdiction over Knobias; (2) upheld the circuit court's finding that Knobias knowingly violated the Withholding Act; and (3) rejected Knobias' attack on the constitutionality of the Withholding Act. 382 Ill. App. 3d at 502-05.

This court allowed Knobias' petition for appeal as a matter of right. 210 Ill. 2d R. 317. We subsequently granted the Illinois Department of Health Care and Family Services leave to submit an *amicus curiae* brief in support of Suzanne. 210 Ill. 2d R. 345. We will refer to additional pertinent background in the context of our analysis of the issues.

## II. ANALYSIS

### A. Personal Jurisdiction

Before this court, Knobias initially contends that the circuit court lacked the requisite personal jurisdiction to render judgment against it. Knobias argues that it is a Mississippi employer that has no contacts with Illinois. To have a valid judgment, a court must have both jurisdiction over the subject matter of the litigation and jurisdiction over the parties. "A judgment rendered by a court which fails to acquire jurisdiction over the parties is void and may be attacked and vacated at any time,

either directly or collaterally." *In re Marriage of Verdung*, 126 Ill. 2d 542, 547 (1989). However, we cannot review the circuit court's finding of personal jurisdiction because there is no record to review the basis of the circuit court's finding.

This court has long recognized that to support a claim of error, the appellant has the burden to present a sufficiently complete record. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005); *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001); *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). "From the very nature of an appeal it is evident that the court of review must have before it the record to review in order to determine whether there was the error claimed by the appellant." *Foutch*, 99 Ill. 2d at 391. "An issue relating to a circuit court's factual findings and basis for its legal conclusions obviously cannot be reviewed absent a report or record of the proceeding." *Corral*, 217 Ill. 2d at 156; *Webster*, 195 Ill. 2d at 432. Without an adequate record preserving the claimed error, the court of review must presume the circuit court's order had a sufficient factual basis and that it conforms with the law. *Corral*, 217 Ill. 2d at 157; *Webster*, 195 Ill. 2d at 432; *Foutch*, 99 Ill. 2d at 392.

As its initial response to Suzanne's petition for rule to show cause, Knobias filed a motion to dismiss for lack of personal jurisdiction pursuant to section 2—301 of the Code of Civil Procedure (735 ILCS 5/2—301 (West 2006)). Knobias' motion states in full:

"Now comes KNOBIAS, INC., by its attorney, LAW OFFICES OF MICHAEL S. DANIAN, and pursuant to 735 ILCS 5/2—301 (providing that 'prior to the filing of any other pleading or motion other than a motion for an extension of time to answer or otherwise appear, a party may object to the court's jurisdiction over the party's person') objects to the court's jurisdiction over Knobias, Inc., the employer of the Respondent, Stephen Kanavel, and moves

that Petition for Rule to Show Cause had [*sic*] other relief against aforesaid employer be dismissed.

WHEREFORE, Knobias, Inc., employer of Respondent, prays for an order of this Court dismissing the Petitioner's Rule to Show Cause."

Knobias did not file a supporting affidavit or memorandum of law, and Suzanne did not file a responsive pleading.

The only other document in the record that addresses the jurisdiction issue is the circuit court's December 15, 2006, order disposing of the matter. The order, prepared by Suzanne's counsel, provides as follows:

"This cause coming on to be heard for hearing on Petitioner's Petition for Rule to Show Cause vs. Knobias, Inc., Petitioner and her attorney present, attorney for Knobias, Inc. present and objecting to jurisdiction over Knobias, Inc., the Court being fully advised in the premises, it is hereby ORDERED:

The Court finding that it has jurisdiction over Knobias, Inc., the attorney's appearance for Knobias, Inc., is converted to a general appearance;

Rule to Show Cause issues against Knobias, Inc., per separate order."

These are the only two documents in the record that pertain to the issue of personal jurisdiction over Knobias.

The record contains no *verbatim* transcript of the hearing, bystander's report, or agreed statement of facts. See 210 Ill. 2d R. 323. Thus, we do not know what evidence, if any, was presented, or what legal arguments were made. We do not know the basis of Knobias' jurisdiction objection, Suzanne's position on the matter, or the basis of the circuit court's finding. We know only that on December 15, 2006, after conducting a hearing, the circuit court found that "it has jurisdiction over Knobias, Inc." Indeed, at oral argument, counsel for Knobias admitted that the basis of the circuit court's finding of personal jurisdiction "is not of record." Under these

circumstances, we must presume that the circuit court's order finding personal jurisdiction over Knobias has a sufficient factual basis and conforms with the law. See *Corral*, 217 Ill. 2d at 157; *Webster*, 195 Ill. 2d at 433-34; *Foutch*, 99 Ill. 2d at 393-94.

## B. Calculation of Penalty

Knobias further contends that the penalty for violating the income withholding notice should be calculated based on Mississippi law. We agree with Knobias.

Illinois provides for income withholding for child support pursuant to our Withholding Act (750 ILCS 28/1 *et seq.* (West 2006)), as does Mississippi pursuant to title 93, chapter 11, of the Mississippi Code (Miss. Code Ann. §93—11—101 *et seq.* (West 2006)). The circuit court calculated Knobias' penalty for violating its income withholding notice based on section 35(a) of the Withholding Act (750 ILCS 28/35(a) (West 2006)). That section provides in relevant part:

"(a) It shall be the duty of any payor who has been served with an income withholding notice to deduct and pay over income as provided in this Section. The payor shall deduct the amount designated in the income withholding notice *** beginning no later than the next payment of income which is payable or creditable to the obligor that occurs 14 days following the date the income withholding notice was mailed ***. *** The payor shall pay the amount withheld to the State Disbursement Unit within 7 business days after the date the amount would (but for the duty to withhold income) have been paid or credited to the obligor. *If the payor knowingly fails to withhold the amount designated in the income withholding notice or to pay any amount withheld to the State Disbursement Unit within 7 business days after the date the amount would have been paid or credited to the obligor, then the payor shall pay a penalty of $100 for each day that the amount designated in the income withholding notice (whether or not withheld by the payor) is not paid to the State Disbursement Unit after*

*the period of 7 business days has expired.* The failure of a payor, on more than one occasion, to pay amounts withheld to the State Disbursement Unit within 7 business days after the date the amount would have been paid or credited to the obligor creates a presumption that the payor knowingly failed to pay over the amounts. This penalty may be collected in a civil action which may be brought against the payor in favor of the obligee or public office. *** For purposes of this Act, a withheld amount shall be considered paid by a payor on the date it is mailed by the payor, or on the date an electronic funds transfer of the amount has been initiated by the payor, or on the date delivery of the amount has been initiated by the payor." (Emphasis added.) 750 ILCS 28/35(a) (West 2006).

The $100-per-day penalty is assessed for each violation of the Withholding Act. *In re Marriage of Miller*, 227 Ill. 2d 185, 194 (2007). In the present case, Suzanne calculated 3,690 alleged penalties, reflected in the circuit court's March 26, 2007, order, resulting in a judgment of $369,000. In contrast, the Mississippi income withholding statute provides that where a payor willfully fails to withhold and remit income pursuant to a valid income withholding order, the payor shall be liable for a civil penalty of not more than $500, or $1,000 where the failure to comply is the result of collusion between the employer and employee. Miss. Code Ann. §93—11—117(1) (West 2006). At issue here is under which state's laws should Knobias' penalty be calculated.

In 1992 the National Conference of Commissioners on Uniform State Laws (Uniform Law Commissioners) promulgated the Uniform Interstate Family Support Act (Model UIFSA) to replace then-existing uniform interstate support statutes. In 1996, shortly after the Uniform Law Commissioners revised the Model UIFSA, Congress mandated that states adopt UIFSA to remain eligible for federal funding of child support enforcement. 42 U.S.C. §666(f) (2000). Model UIFSA was most recently revised

in 2001. See Uniform Interstate Family Support Act (amended 2001), Prefatory Note, 9 (Part IB) U.L.A. 161-62 (2005). Model UIFSA defines "income withholding order" by referring to each state's income withholding law. Model UIFSA §102(6), 9 (Part IB) U.L.A. 175-76; 750 ILCS 22/102 (West 2006); Miss. Code Ann. §93—25—3(f) (West 2006).

Model UIFSA "contemplates interstate cooperation to effect an expeditious collection of child support across state borders. It provides 'unity and structure in each state's approach to the modification and enforcement of child support orders.' [Citation.]" *Campbell v. Campbell*, 391 N.J. Super. 157, 160, 917 A.2d 302, 304 (2007); accord *Walton v. State ex rel. Wood*, 50 P.3d 693, 695 (Wyo. 2002) ("UIFSA was designed to streamline and expedite interstate enforcement of child support decrees"); *Thrift v. Thrift*, 760 So. 2d 732, 736 (Miss. 2000) (collecting cases) (observing that Model UIFSA "provides a procedure whereby child support orders may be enforced in foreign states" (emphasis omitted)); *In re Marriage of Hartman*, 305 Ill. App. 3d 338, 342 (1999) (observing that UIFSA "creates a mechanism which facilitates the reciprocal enforcement or modification of child support awards entered in Illinois and other states which have also adopted [UIFSA]").

This court has long recognized that in construing uniform legislation, a court must interpret the statutory language so as to give effect to the beneficent legislative purpose of promoting harmony in the law. The court must take the statute as it is written, giving the words their natural and common meaning. The uniform legislation was enacted to furnish in itself a guide to determine all questions covered thereby and, so far as it unambiguously speaks to any such question, reference to prior case law is more likely to be misleading than beneficial. If the provisions of the uniform act harmonize with general

principles in force prior to the enactment, those principles should be followed. However, if the language of the uniform act conflicts with prior statutes or decisions, a court should not give the act a strained construction to harmonize it with earlier statutes or decisions. Such a construction would defeat the very purpose of the act. "In order to keep the law as nearly as may be uniform, the courts of all the States should keep in mind the spirit and object of the law and should give to the language of the act a natural and common construction, so that all might be more likely to come to the same conclusion." *National City Bank of Chicago v. National Bank of the Republic of Chicago*, 300 Ill. 103, 107 (1921); accord *Sherer-Gillett Co. v. Long*, 318 Ill. 432, 435-36 (1925). In construing and applying the Illinois UIFSA, we must consider the need to promote uniformity among the states that have enacted it. 750 ILCS 22/901 (West 2006); accord Model UIFSA §501, 9 (Part IB) U.L.A. 269; Miss. Code Ann. §93—25—115 (West 2006).

UIFSA provides that an income withholding notice may be sent directly to the out-of-state employer of an obligor. Upon receipt of the order, the employer must begin to withhold and remit the employee's income without the necessity of a hearing unless the employee objects. Model UIFSA §§501 through 507, 9 (Part IB) U.L.A. 232-40; 750 ILCS 22/501 through 507 (West 2006); Miss. Code Ann. §§93—25—67 through 93—25—79 (West 2006). Specifically, section 502 of Model UIFSA provides: "The employer shall treat an income-withholding order issued in another State which appears regular on its face as if it had been issued by a tribunal of this State." Model UIFSA §502(b), 9 (Part IB) U.L.A. 233; 750 ILCS 22/502(b) (West 2006); Miss. Code Ann. §93—25—69(2) (West 2006). Further: "An employer who willfully fails to comply with an income-withholding order issued by another State and received for enforcement is subject to

the same penalties that may be imposed for noncompliance with an order issued by a tribunal of this State." Model UIFSA §505, 9 (Part IB) U.L.A. 237; 750 ILCS 22/ 505 (West 2006); Miss. Code Ann. §93—25—75 (West 2006).

In the present case, the appellate court recognized that Mississippi law directed Knobias to regard the income withholding notice as though it issued from a Mississippi court. 382 Ill. App. 3d at 504, quoting Miss. Code Ann. §93—25—69 (West 2006).[2] However, the appellate court failed to recognize that, based on this reciprocal statutory scheme, Knobias must be penalized according to the law of its state—Mississippi (Miss. Code Ann. §93—11—117(1) (West 2004)). If the situation were reversed, where Knobias were located in Illinois and disregarded an income withholding notice issued from a Mississippi court, section 505 of Illinois UIFSA would subject Knobias to the same penalties that would be imposed for noncompliance with an income withholding order issued by the circuit court, namely, the $100-per-day penalty of section 35(a) of the Withholding Act (750 ILCS 28/35(a) (West 2006)).

UIFSA establishes a uniform procedure for enforcing an out-of-state child support order. However, it uniformly directs the employer-violator to the law of its state for the appropriate sanction. We remand the cause to the circuit court to recalculate Knobias' penalty based on section 93—11—117(1) of Mississippi's income withholding statute. Miss. Code Ann. §93—11—117(1) (West 2006).

### C. Due Process

Lastly, Knobias contends that imposition of the $369,000 penalty, calculated based on section 35(a) of the

---

[2]For this reason, the appellate court's reference to the principle of full faith and credit is inapposite.

Withholding Act (750 ILCS 28/35(a) (West 2006)), violates the due process clause of the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) as applied to Knobias under the circumstances of this case. While the constitutional question was sufficient for this court to review the appellate court judgment as a matter of right (210 Ill. 2d R. 317), as we view the record, it is not necessary to determine the constitutionality of section 35(a) of the Withholding Act as applied to Knobias. This court will not consider a constitutional question if the case can be decided on other grounds. *People v. Lee*, 214 Ill. 2d 476, 482 (2005). We have concluded that Knobias' penalty was erroneously calculated based on section 35(a) of the Withholding Act, and have remanded the cause for recalculation based on section 93—11—117(1) of the Mississippi Code. Our holding obviates discussion of whether section 35(a) of the Withholding Act is unconstitutional as applied to Knobias. See, *e.g.*, *People v. Hall*, 217 Ill. 2d 324, 341 (2005).

### III. CONCLUSION

For the forgoing reasons, the judgment of the appellate court is affirmed, as modified, and the cause is remanded to the circuit court of Lake County for further proceedings.

*Affirmed as modified;*
*cause remanded.*